Thomas J. Madigan, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 10, 1979, before Judges WILKINSON, JR., ROGERS and CRAIG, sitting as a panel of three.

*Thomas J. Madigan,* petitioner, for himself.

*Charles G. Hasson,* Assistant Attorney General, with him *Edward G. Biester, Jr.,* Acting Attorney General, for respondent.

Opinion by Judge Rogers, October 17, 1979:

This case involves the entitlement of Thomas J. Madigan to unemployment compensation benefits for the compensable weeks ending October 2, 1976 through January 1, 1977. We are impelled by the circumstances of this case to reverse the decision of the Unemployment Compensation Board of Review that Mr. Madigan was ineligible for benefits for the period in question by reason of his failure to report weekly at the Bureau of Employment Security office. Section 401(b) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess. P.L. (1937) 2897, *as amended*, 43 P.S. §801(b), indeed makes it a requirement that an applicant continue to report at his employment office; we hasten to point out, however, that the same provision of statute provides that this requirement may be waived in situations where compliance would be oppressive. This is such a situation.

Mr. Madigan, a supervisor of the Port Authority Transit of Pittsburgh, was involuntarily retired because he had attained the age of 65 years. He filed an application for unemployment compensation benefits in July, 1976, and beginning in August 1976 collected benefits based on a favorable determination of his eligibility. In the first days of September 1976 Madigan was called in for an interview by an unemployment claims examiner who told him that the compensation authorities had decided that he was not eligible for compensation, that he would receive no more benefits, that he would be required to return the compensation he had already received and that the Bureau would be in communication with him concerning repayment. Madigan expressed concern, especially about reimbursement because he had bought and paid for storm windows with the money.

Next, Mr. Madigan received a written notice from the Bureau dated September 9, 1976 which stated that

500

an earlier written decision declaring him eligible was vacated and that benefits were disapproved. This notice told him that he might appeal the determination within 15 days. Madigan did not file an appeal. He next received in the mail a notice dated September 24, 1976 reading as follows:

> The decision dated 9-9-76 will not be finalized until further investigation is completed. A new decision will be issued at that time.

Madigan interpreted this notice as referring to his obligation to return the money he had received during the weeks of his supposed eligibility. He failed to report to the Bureau office weekly after September 9, 1976 because he had been declared ineligible.

The Bureau failed to send Madigan any "finalization" of the September 9, 1976 notice or any new decision as promised in the notice of September 24, 1976. In January, 1977 Madigan met another former employee of the Port Authority Transit who had been separated from his job in circumstances identical to Madigan's. The friend told Madigan that he, the friend, had been declared eligible for compensation and that he was receiving benefits. Madigan thereupon reported back to the Bureau which declared him to be, and to have been, eligible for compensation from the time of his retirement. The Bureau decided, however, that Madigan could not have benefits for or after the week ending September 11, 1976 and until the week ending January 1, 1977 by reason of his failure to report. The Board of Review declared him eligible for the weeks ending September 11, 18 and 25, 1976 but not thereafter until January 1, 1977. This modification was based on the Board's conclusion that Madigan's failure to report on these three weeks was attributable to the Bureau but that his failure to report after receipt of the September 24, 1976 notice was attributable

to him. We disagree with the Board's second conclusion.

The referee and the Board of Review made the following findings:

5. On September 24, 1976, the local office issued a decision vacating the decision issued September 9, 1976, pending further investigation.

6. The claimant received the determination, but did not contact the local office to discuss the decision.

7. The claimant was not prevented from reporting to the local office from September 24, 1976 and after that date.

Finding number 5 is a misstatement of the contents of the September 24, 1976 communication. It made no mention of the vacation of the September 9, 1976 notice; it said that the September 9, 1976 notice would not be "finalized until further investigation is completed." With respect to finding number 6, the September 24, 1976 communication did not tell Madigan to "contact the local office to discuss the decision" and we discern no reason based on that communication why he should have done so. It is of course true, as finding number 7 says, that Madigan was not prevented from reporting to the office after that date. However, we agree with Madigan that, from his standpoint, having been declared ineligible in a decision which he had not appealed further reporting was pointless.

Passing to the question of Madigan's belief that the September 24, 1976 notice referred to possible future Bureau action with respect to the money he had received, as the claim representative had told him would occur, this interpretation is as reasonable, if not more reasonable, an understanding of that communication than that urged by the Board—that it meant

that the decision of ineligibility had been vacated and that Madigan should come in and discuss the matter.

Furthermore, no explanation appears in the record for the failure of the Bureau to pursue the matter of Madigan's eligibility, if that is what the notice of September 24, 1976 said was about to happen. If a decision had been made and communicated within a reasonable time, he would have resumed reporting much sooner than January, 1977.

In short, we believe that the Board of Review erred in placing the onus of Madigan's failure to report after September 25, 1976 on Madigan and that the Board of Review's order should be reversed. We add, however, that we do not intend to detract from the importance of strict compliance with the reporting requirements of the statute and regulations and that this holding applies to these unusual facts.

Order reversed.

ORDER

AND Now, this 17th day of October, 1979, the order of the Unemployment Compensation Board of Review insofar as it denies compensation for compensable weeks ending October 2, 1976 through January 1, 1977, is reversed and compensation is directed to be paid for those weeks; the order is otherewise affirmed.